Case is Rutherford Controls v. Vanguard, 2010, 1113. Rutherford Controls v. Vanguard, 2010, 1113. Before you begin, I'd just like to say we've got before, the panel has before it the request for the notice of visual aids and then your objection, and we reject your objection given that the visual aids at issue are a part of the record here. The record also, of course, includes the objections you made below with respect to the deficiencies that you allege with respect to the visual aids. Okay, that's fine, Your Honor. We just wanted to point out, make the court aware of the circumstances under which the defendant was used below. I appreciate it. We're ready? Whenever you are. May it please the court, good morning, Your Honors. My name is William Bergman. I represent the appellant, Rutherford Controls International. With me today is Neil Seth. This case is about electric strikes, as you probably know. I'd just like to briefly give you a little bit about the background of the technology. These are devices that are mounted in door frames. They hold the door closed when they are supposed to be closed, permit access when the door is supposed to be opened. The electric strike itself can either be fail-safe or fail-secure. Fail-safe means that when the power is lost, the door will be in a locked position. I'm sorry, fail-safe means that you can open it, people can leave. Fail-secure means that the door stays locked. The patent and invention relates to a field-reversible electric strike. The 830 patent claims a novel electric strike that can switch between the fail-safe and the fail-secure modes. Well, let me direct you to the specification, so correct me if I'm wrong. As I understand at least one of your arguments, it's that the court's claim construction here was too narrow in that it excluded notches and detents. Yes, Your Honor. How does the inclusion of notches and detents, even if we were to agree with you that it should have included that, get us to your proposed claim construction, which is just a single mechanism, which seems far broader than even his construction of the rotation, etc., plus notches and detents? We discussed the notches and the detents just to point out that the court's construction is far too narrow. We arrived at our construction because that is what the specification itself says in the invention. There's actually a nice little part of the specification that says the key to this invention is that as a single mechanism, it is capable of sliding this housing piece inside of the device. Is that the language at column 5, line 53, the two position mode selectors a key feature of the invention? No. It's going to be, I think, slightly above that. I mentioned that only because it sounded sort of like what you were saying. That is one spot where it talks about it. There is another point. That one spot, though, says simply by rotating the selector. Column 7 lines around 43. After discussing all of the different embodiments, the biasing means, says some further such examples are illustrated in figures 30 to 33, key being that each mechanism results in the pin 62 moving from a one-end position to the other, thus moving the holder 30 from one mode position to another. That's actually how the mode is changed. You move this part inside of the device, and the key is that there's all of these different embodiments. There's five embodiments. They all rely on just a single mechanism to change the mode. There's nowhere anywhere in the specification that there's a discussion of a single movement as being a feature of the invention. I understood in one of the arguments you were making, Mr. Ring, was that in challenging the single movement construction of the district court, you pointed to the language in the specification at column 7 lines 40 through 43, I guess it is, of notches and detente to which Judge Prose was just referring. Exactly how does a notch or a detente, if you will, show something different than a single movement? I think the notch is the clearest example. For example, a notch, what the invention talks about is you've got something that's going to move to move this piece inside a chain. You've got the pin, or I guess it's 62, on item 60, which moves the holder. Exactly. This pin needs to be biased in one position or the other. You've got to keep it in place and fail safe or fail secure, particularly because doors can be slammed a lot. These are often very heavy doors. You need something to keep it in position so it doesn't switch to the other mode. When you're going to use the notch biasing, what you do is carve out a section of the metal housing, either it could be on the outside of this or somewhere inside the piece. The piece that's sliding is going to be sitting inside of the notch. You have to lift it up out of that notch, slide it to have the inner pieces changing the mode, operate, and then place it back down in a different notch. That's how it would be biased in place. How do we know that? I mean, the only reference to the notch, I believe in the specification, you can correct me if I'm wrong, is there could be notches or the like, which the movable double selector elements would engage. So how do we get from that language to your whole description? Well, I think one of ordinary skill in the art would recognize that that's how notch biasing is going to work, and as our expert testified below. One of ordinary skill would just recognize that a notch is something that's cut into something else like a piece of the metal, and if you're going to have notch biasing, it's going to be more than just a single sliding movement. It's going to be clicking in place, so it's got to sit into the notch. So two movements. Yes. Well, one movement to take it out of the notch, another movement to slide it, and another movement to put it back into a different notch. So that's going to be three movements there. But really, I think the main error is that the judge, you just don't look at the embodiments and say, aha, I found a common feature. They all work with a sliding movement. There's nothing in the specification that says that's the invention. As this court has said, that's the cardinal sin, taking a limitation from the embodiments and simply making it a claim element. And that's what the judge did. He read that into the claim. Well, I guess that's true, but here you have a claim term that has no ordinary meaning. Am I right about that? Yes. There's two position modes. Selector is, as far as I know, something that the patentee used to describe his invention. And so you have all kinds of requirements, including written description and enablement. So what are you suggesting that the construction, if the construction isn't limited to what's in the specification, what limitations at all exist with respect to what this term of art created by the inventor? Well, I think that it does say that the key is that it's a single mechanism that moves this thing. It's very narrow to say it's got to be a single movement. I mean, now you're excluding something as simple as I said is the detente one, where you just take it out of a notch and slide it and put it back in a notch. There's nothing in the specification that says the claim should be read that narrowly. There's all sorts of little simple ways that you could make this switch work that's going to be more than just a single movement. The prior art is much further away from this. The prior art Chang, which SBC talks about, is actually described in the patent specification itself, has a system where you first have to remove a screw from one part of it, loosen another screw on another part of it, slide this loosen screw down, make sure it doesn't fall out, make sure two holes are lined up in another area, and then put back the first screw in a separate hole. That's going to be at least two different mechanisms there. The invention, as it says in the specification, is making this a much simpler thing for the device to operate. Well, in what you say in the specification about the prior art, I guess it's not clear to me that there are two mechanisms. Looking at column one, lines 48 or so, you say, however, doing so, this is talking about the prior devices, is tedious and tricky, requiring proper alignment of holes, careful removal and replacement of one screw, and careful loosening without removal of another screw. How is it clear to us, necessarily, I mean, I know the one thing you're talking about, but that this necessarily includes two separate mechanisms? Well, one could argue that it's more than two mechanisms. But I think there is actually a, I mean, Mr. Nuda is bringing a physical sample, and there's pictures in the briefs, that it is two separate parts of the device that have to be operated. And it's two different screws. I mean, that there is, it's almost two different mode selection parts that the user has to operate. How do we know that from the language in the specification? Well, it says, it describes the two different screws that have to be manipulated. It talks about how it works. You know, I would also point out that in SDC's own patent that they got on their device, they essentially repeated this language that was found in Rutherford's patent. And when they were getting their patent, they said... I'm sorry, what language? The language describing the prior art. The distinction drawn between the prior art? Yes, and they said the prior art was a tricky and tedious process. And their process consisting of loosening the screw and sliding it and putting it back in place was a much simpler process. And therefore, they distinguished their process of the prior art as well. So, I don't think it's fair for them to argue now that they have this procedure which is much more complex. And yet, when they got their own patent, they argued that it was a very simple procedure. And they distinguished over the prior art and said that it was a tricky and tedious procedure. You want to save your rebuttal? Are there any further questions? I just had one question, Mr. Bergman. With respect to the detente feature and the notch feature that we've been talking about, I guess in particularly the notch feature, is there anywhere that we can see that in any of the figures in the specification? I mean, it may not be there, but I just wanted to check. Is there any representation in these? I don't think that that actually is shown in the drawings. And unfortunately, the district court, for whatever reason, looked at the drawings and said this is how I'm going to figure out what the invention is. But that's not the way you might expect. I didn't. I thought, I think I agree with your answer. I don't think it is shown, but I just wanted to check to make sure I hadn't missed something. I'd just like to briefly talk about the summary judgment motion that was granted as well. As you know, it's a fairly simple issue. Two SDCs' device operates by loosening a screw, sliding that screw, and then tightening a screw. Both experts testified that the second step is unquestionably a single movement, and they both testified that that is when the device changes from fail secure. Let me ask you, on this, you're talking about the, basically the 053 patent. It was on the A30. The A30. Yes. But on the 053, as I understand, you don't challenge the district court's claim construction with respect to the limitations there, is that correct? We feel that it was still too narrow, because it does not encompass, but we are not raising that on appeal. No, you're on. So, in other words, if one were just, if one just looks at the 053 patent and the infringement issue, we have to accept, for purposes of ruling on the propriety of the summary judgment of non-infringement, we have to accept that claim construction, right? Well, that's not an issue. No, no. But I mean, but we have, no, but we have to accept, in other words, if you're not challenging the grant of summary judgment of the 053 patent based on claim construction, then we have to just accept that claim construction and just say, all right, given that construction, was summary judgment proper or improper, right? No, I don't think that you have to do that, Your Honor. If the issue is not before the court, you don't have to make any assumptions at all about it. But no, but you're not challenging the claim construction in the 053 patent, correct? We are not raising it on appeal. We do say that we disagree with it, though, so we do challenge it in that respect. I mean, for purposes of our appeal, we don't want to— Are you asking us to evaluate on the appeal the summary judgment of the 053 as well as the 830? Pardon me, Your Honor? Are you asking us on appeal, though, to evaluate the grant of summary judgment on the 053 as well as on the 830? No, we are not asking you to evaluate the 053, but we're saying there's no reason to just accept it as correct either. Is anything on the 8053 patent included in this appeal? No, Your Honor. I was confused, Your Honor. I thought . . . In your blue brief on page four, I think this is where my confusion actually stems from. On four, when you have the statement of issues, the second issue you articulate on the summary judgment seems to reference both the 830 and the 053. You are correct, Your Honor. We are challenging the 053. In the conclusion, you say you were just to vacate the judgment of non-infringement of the 053. You are correct, Your Honor. I apologize. I was incorrect. In other words, you're saying the summary judgment of non-infringement was incorrect, but you're not challenging the claim construction under which that summary judgment was granted, right? We did not challenge the claim construction, yes. Going back to what I said before, we have to accept, for purposes of the 053 patent, the correctness of that claim construction, right? Yes. Even if you accept the correctness, however, as both experts said . . . You're saying, even if one . . . Yes. What you're saying is, Federal Circuit, we don't challenge that claim construction. However, under that claim construction, summary judgment was improper. Yes, Your Honor. Okay. Thank you, and we'll restore two minutes of rebuttal. Thank you, Your Honor. And if, Ms. Thomason, if you want to add two and a half minutes to the other side, if you need it for additional time. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, good morning. My name is Stephen Nunez, and I represent Security Control. With me is Mr. Jay Heibel, who is co-counsel in the case, and I'd like to cut right to the heart of this matter, Your Honors. In this case, the District Court was faced with a difficult decision, as Your Honor has noted. It had an ambiguous term that it needed to put a meaning on. There was no accepted term within the art, and all it had under Phillips was to go to the specification. And that is where the Court tells us to go when you have a claim term that you can't understand what it means. In this case, the trial court did not import limitations from the specification, nor did it limit the claim term to just the embodiments disclosed. It read the term in light of the context of the specification, and in particular, in light of the description of the invention made by the patentee. At the end of the day... We wanted to point just to, in the specification, what you think are the clear and broad descriptions of the invention that correspond to the District Court's claim term. How it is, Your Honor, that the Court got to the single movement... Yes, ma'am. Your Honor, the manner in which the Court got there was it read the background of the invention, where the issue in this case is framed. Like several of the cases in this Court, the patentee described that the prior art that was out there was, to use a term I have a problem with, tedious and tricky. But when I look at it and when I read the specification, it's clear to me that there are a lot of different motions and movements going on to accomplish the goal of changing mode. When the Court read that, it was clear that the patentee was offering a solution to that problem. The solution is described in Column 5, at lines 52 to 55, which I believe Judge Schall pointed out, and I'll read it. The two-position mode selector is a key feature of the invention. It is in that it provides a very simple means for the installer to switch between modes simply by rotating the selector. So that's where you get the single movement? That's part of it, Your Honor. That is where the patentee describes the invention. And I should note that this paragraph comes on its own, and it's separated from a discussion of the preferred embodiment. And many times in this Court's decisions, the Court has pointed out that where the patentee describes its invention and describes a feature of that invention, it takes on an importance for claim construction. What about, I mean, we do have two other provisions, parts of the spec. Column 7, there's the kind of standard language that says, you know, we've been talking about a preferred embodiment. But then, and we were discussing this with Mr. Bergman, further down in Column 7, there is discussion of détente and notches, and particularly notches. And Mr. Bergman explained, and there is some testimony in the record, I think it's at 10454 through 10455, where there's a discussion of a notch arrangement. And that shows more than one movement. What is your answer to his point about the notches and the reference to them in the spec? Yes, sir, Your Honor. We believe what is disclosed is consistent with a single movement. Testimony that you're referring to, I believe, refers to the Vanguard strike, which was a different strike and had a different construction where you had to actually push the selector in and then turn it and move it in a couple different ways. I think as Judge Prost pointed out, the discussion in the specification does mention notches and détentes. There is no discussion that it would require a separate movement other than sliding it out of the notch and into the next notch. Oh, I see. What you're saying is that 10453 is where Mr. Oxley is talking about notches and détentes in the setting of the specification, whereas at 10454, he's actually responding to a question concerning the Vanguard device. Is that what you mean? That is my understanding, Your Honor. And it's a completely different device. I think the important point is, what does the specification teach? And if you look at all of the drawings, if you look at all of the discussions, what is taught, and this went into the court's decision, is a single movement. As Judge Prost asked, there is not a drawing that shows notches and détentes that would be anywhere different from the single motion described. But if we take what one skilled in the art would understand as to how a notch moves, you've got at least two movements, right? You've got the pressing down and the sliding. You could have a notch in the outside housing. You simply slid the button or lever or bar slightly up and over. But you have to move the... You would be a lateral movement still. It would be at a 45-degree angle as opposed to flat. That's all. But doesn't it require a second movement of pressing something to get it down before you slide? You have to do something before you slide. You can't, right? The specification does not teach that. All it says is notches and détentes. And what is important is, the notches and détentes are a biasing mechanism. They're a mechanism that holds the mode in place once it is selected. So, for example, if you read the specification, there are springs that once you get the lever moved over, the spring holds the thing in place. That's a separate element. Now, this is, I guess, Mr. Oxley at 10453 talking about a notch. He says, a notch is a similar depression, and he's previously talked about a détente as a whole, that's kind of linear, so that your device would drop in between two hills in a kind of plain-sense meaning. But to follow up on what Judge Prost was saying, wouldn't you, to get it, let's say it's between the two hills in the fail-safe mode, and you want to switch it to the fail-secure mode, aren't you going to have to do something to get it out of the depression and then move it? Your Honor, I guess that would be... See what I'm saying? Yes, sir, Your Honor, and it's a fair question. I think you have to understand what the notch is. I don't think it could be, in the rest of the specification, it can't be something that would entail tricky and tedious movements to accomplish. The way I envision it is, it simply would be a lateral motion, maybe slightly up, and then the lever would drop into the next depression, depending on how big that is. I don't think that that would qualify as a second movement. I suppose you could have a factual issue on that if that were in front of the court. I think that what the court did was it read the specification as a whole, and I think one of the questions it raised was an excellent question, and it dealt with enablement. When you have a broad term like two-position mode selector, and you're trying to have the public understand what it is, you can't claim in your specification to have invented, for example, to borrow from the Lizard Deck case, a fuel-efficient engine of a certain kind, and then claim in your claims that you get all fuel-efficient engines. Yeah, but the problem is this patent wasn't struck for enablement. I mean, why should that infect our view? I think it's limited to the extent to which we can use the potential for invalidation, or enablement, or obviousness, or anything. I'm not arguing that it should be invalidated. I'm pointing out the problem I thought you were pointing to, which is the court is faced with a decision. It's got a very broad term that doesn't have a clear decision or a clear term meaning. It's not defined specifically in the specification. What does Phillips tell him to do? It tells him to go and read the specification to interpret that term in light of the full specification in its context and the invention disclosed. And it's our position that just as this case did, this court did in the Nystrom-Lietrex case, that court was faced with a similar decision. It had a term, bored. And what did it do? It said, OK, the plain and ordinary meaning of bored is very broad. It could mean lots of things. But we can't give it that broad meaning without looking back at the specification and trying to decide what did the patentee mean? How did he use this term? And in that case, what this court said was that there was a clear framing of the issue in the background of the invention, similar to this case. The term was used consistently to refer to a piece of wood cut from a log. All of the examples talked about a piece of wood cut from a log. What you have to say, in order for us to agree with your position, Mr. Noonan, I guess what we have to do is agree with your view, which is the term two-position mode selector, which is used in the claims, if you try and find a meaning for it, you're led to something that operates in just one way. That's your position, right? Yes, and you're not led to a discussion or a suggestion that it be operated in the way that Rutherford is arguing, that it can be anything, even if you were to try to limit it to a single mechanism. At some point, you have to draw a line. The patent starts with the proposition that the prior art does this, and it does it in a tricky and tedious way. I read that as fumbling for a screw, as lots of different motions in an inefficient manner. The patentee then comes out and says, aha, I've solved that. I've got a way to do that that's simple. All you have to do is turn the button 180 degrees, slide a bar or a lever to one side, pivot a pin in one direction, push a button in. All of those are descriptions of a very simple way. Let me ask you, not to sort of be a Johnny OneNote here, but looking at the, how would you say that the device that's shown, figure 60, it's not figure 60, it's number 60. Yes, sir. How would that operate in the setting you think where you had a notch? As best as you can describe it. I would be guessing, but my understanding would be you still would have to have a pin. You'd make your one movement, and what would that result in? That would move the holder, which is the piece behind 60. That would realign the internals of the strike so that there was a blocking mechanism in place, or there wasn't. So that at the end of the day, it would function much like a lever that you slid over, and when you slid it over, the pin would move the holder. The holder would realign the blocking elements, and either the, I don't want to get in trouble, but either the blocking things would allow the strike to be locked as this is now, not move in. But how would the notch feature come into play? The notch would only hold it in place. It is the biasing needs, which is a separate element, just as this has a spring that once you slide the screw over, push it down, tighten it down, that holds this item in place. The holder will not slide back. With a notch, you would slide it over, and it could be with a spring. It could drop into that hole by itself, and then it wouldn't move back. How would you get it out, though, if you want to go to the other mode? You would push it in the other direction, and either you would have to push it, depending on the severity of the notch, up and over or just over. I realize that's your best rendition of it. Thank you. Yes, sir, Your Honor. I'm doing my best here. It is true. It is not. That particular feature of operation isn't shown in any of the drawings. It is not. And, Your Honor, I think if the court will look at several of the cases that have been faced with this same situation, Bell Atlantic v. Kovad, which is a 262 F. 3rd, 1258. Recently, the Edwards Life Sciences v. Cook case, 582 F. 3rd, 1322. The Symed case, 242 F. 3rd, 1344. All of these cases are cases in which the court has to find a meaning for a broad term that does not have a set meaning in the art, and it has to look at the specification in order to place limits on it. Because, unlike the regime prior to Phillips, where we looked to a dictionary and we gave words the broadest possible meaning, in essence, unless it was somehow inconsistent. Let me ask you one other question. I'll probably ask Mr. Bergen when he gets up. If you go to column 7, again, lines really 40 through 43 here. And this is talking about the notches again. It says, It could be notches or ball spring detents or the like, which the movable selector elements would engage. Okay? What is being referenced there by the words movable selector elements? What do you read that as a reference to movable selector elements? See that there? Yes, sir, I do. I would read that as being the mode selector. And it could refer to, as well, a separate element being the holder because when the holder moves, it would have to engage the holder in order to keep it from moving back. It seems to say that. The movable selector elements would be, if you look at, I guess, I guess it's figure 17 that shows it. One of the movable selector elements would be what's shown in figure 16 and 18 there, right? That's what you? You're referring to 60, you're right. Yes, 60, yes. My problem with the question is there are some sub-elements, 62, which is the pin, for example. No, I understand, yeah. Well, yes, I believe that it would be fair to read this as saying that in order for, it could mean that. It also could mean the holder. It does suggest here, this language in here, that the notches and detents are, as you were saying, sort of the biasing feature. Yes, sir. Okay. In my remaining 18 seconds, Your Honor, I'll be happy to answer any questions about summary judgment. I'm assuming that the extra time has been allotted already. Yes, ma'am. We believe that the district court, once it correctly construed the patent, found that the series 45 of the security door strike took more than one movement in order to change the mode, and therefore non-infringement was appropriate. Thank you. I'll be happy to answer any more questions. Time is up. Thank you, Mr. Munoz. Mr. Ferdinand, you have a couple minutes. Thank you, Your Honor. I'd just like to go over the expert testimony, which Judge Schall has alluded to. To put it in context, this was at the Markman hearing, and Mr. Oxley was asked to describe what is a notch, how does the notch biasing work. As Judge Schall correctly pointed out, he said that it is something that's linear, and then the device drops into it, which shows you that it is going to be more than a single movement. Is that the sum and substance of all of the testimony, expert testimony on how the notch of the detente operates? Well, the point I wanted to make is then when he started to talk about the Vanguard strike, that was actually him testifying about an example of how one of ordinary skill in the art would view the notch embodiment as working. So that was illustrative. And what he was talking about when he was talking about the Vanguard strike was how would the notch claim language be construed to one of ordinary skill in the art. We just happened to have an example of that in one of the accused devices. So that testimony was not just some irrelevant testimony about the Vanguard strike. It was meant to illustrate how a notch would work. Mr. Brubin, going back to column seven that I guess we've discussed with you previously and also we were discussing with Mr. Nuna, lines 40 to roughly 43 in there that I read to Mr. Nuna, there could be notches or ball spring detentes or the like, which the movable selector elements would engage. And I asked Mr. Nuna what was being referred to with the words movable selector elements. And he said it would be basically what's shown in figure 16 there, the item 60, 62, and then possibly the folder. Do you agree or disagree with that? Well, I think it's the two position mode selector is what it's being. Yeah, okay. And 60 is one of the examples of the two position. So it seems to be this suggests maybe that the two position mode selector is sort of different from the notches or detentes. In other words, the two position mode selector brings something into the notch of the detente, right? Yeah, I think what he's saying is the two position mode selector is kind of the button or the screw or the sliding lever or one of the many embodiments and the notch or the detente is the biasing means. So it is something that works with the two position mode selector. Okay. Any other further questions? Thank you very much. Thank you, Your Honor. I would like to thank both counsel and cases submitted. Thank you, Your Honors. All rise. The court will adjourn until Friday morning at 10 o'clock.